## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kenneth Steven Daywitt and Kenneth Gernard Parks, | No. 17-cv-5574 (NEB/TNL) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Minnesota Department of Human Services, Minnesota Sex Offender Program, Sara Kulas, Justin Joslin, Tara Osborne Leivian, Nicole Vaineo, and 1E clinical team, in their individual and official capacities, | |
| Defendants. | |

Kenneth Steven Daywitt and Kenneth Gernard Parks, 1111 Highway 73, Moose Lake, MN 55767 (pro se Plaintiffs); and

Michael N. Leonard, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101 (for Defendants).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motion to Dismiss Plaintiffs' Complaint. (ECF No. 19). This motion has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (ECF Nos. 1, 11). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that Defendants' motion be **GRANTED IN PART and DENIED IN PART.**

1

## I.    BACKGROUND

Plaintiffs Kenneth Steven Daywitt and Kenneth Gernard Parks are civilly committed to the Minnesota Sex Offender Program ("MSOP"). Compl. ¶¶ 5-6. Four years ago, they were involved in a romantic relationship. Compl. ¶ 24. They have since separated and remain friends. *Id*. In November 2015, they asked to become roommates. Compl. ¶¶ 27, 29. Plaintiffs were each having trouble with their current roommates and believed that their current living arrangements posed safety concerns for them. Compl. ¶¶ 26-28.

In response, the treatment team at MSOP told Plaintiffs to attend group therapy sessions, talk about issues, strengths, and problems at those sessions, and present to the clinical team a plan that would address concerns the team had regarding Plaintiffs' previous relationship. Compl. ¶ 25, 28. Plaintiffs believed that if they followed through with those recommendations, the clinical team would consider Plaintiffs' request to become roommates in a few months. Compl. ¶ 29.

In February 2016, the clinical team denied Plaintiffs' request to become roommates. Compl. ¶ 34. The team informed Plaintiffs that they did so for "safety concerns." *Id*. In response to a request from Plaintiffs seeking clarification regarding that decision, Defendant Tara Leivian indicated that the majority of the team could not support placing Plaintiffs in a situation where it might "be difficult to avoid rule breaking behaviors" given Plaintiffs' "previous sexual history." Compl. ¶ 38.

After hearing from his primary therapist that more than half of the clinical team supported Plaintiffs' requests to become roommates, Daywitt asked Defendant Sara Kulas for additional information. Compl. ¶ 40. She told him to "ask your primary therapist why,"

but later clarified "that it was a team decision to not support Plaintiffs' being roommates." Compl. ¶¶ 40-41. Daywitt believes that only four of the twelve members of the clinical team actually opposed Plaintiffs' requests. Compl. ¶ 43. Plaintiffs subsequently filed suit, alleging that the decision to deny their request to be roommates violated their civil rights. *See Daywitt v. Minnesota Dep't of Human Services*, No. 16-cv-648, 2017 WL 8947245 *1, No. 16-cv-648 (D. Minn. Jan. 27, 2017), *report and recommendation adopted as modified by* 2017 WL 1406374 (D. Minn. Apr. 20, 2017). That case was subsequently dismissed for failure to state a claim upon which relief could be granted. *Id.* at *4.

Plaintiffs resubmitted their request to be roommates in June 2017. Compl. ¶ 44. The clinical team again denied Plaintiffs' request and ordered them not to submit another one. *Id.* Plaintiffs again filed suit, alleging that the denial of their request constituted a violation of the Minnesota Human Rights Act ("MHRA"), the Equal Protection Clauses of the 14th Amendment to the U.S. Constitution and the Minnesota Constitution, and Title II of the Civil Rights Act of 1964. Compl. ¶¶ 49-72. Plaintiffs seek compensatory and punitive damages against each Defendant and request that the Court issue a declaratory judgment holding that Defendants discriminated against Plaintiffs in violation of the MHRA and Equal Protection Clause of the federal and state constitutions. Plaintiffs also ask that the Court issue a permanent injunction ordering Defendants to terminate discrimination against them and others and to allow them to become roommates.

3

## II.    MOTION TO DISMISS

Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). [1] When determining a Rule 12(b)(1) motion, courts "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.*

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015)

---

[1] At the outset, the Court notes that Defendants did not meet and confer with Plaintiffs before filing this motion to dismiss. Instead, Defendants claimed that their previous meet and confer with Defendants, which occurred on October 20, 2016 and was related to a motion to dismiss that was filed in *Daywitt v. Minnesota Dep't of Human Services*, No. 16-cv-648, was sufficient because the two cases are nearly identical. Though the Court appreciates that the parties are unlikely to resolve issues related to a motion to dismiss at a meet and confer and that the two cases raise the same types of issues, Defendants' decision to forgo a meet and confer before filing this particular motion is in direct contradiction to Local Rule 7.1, which requires that a meet and confer be filed before any motion, unless for a temporary restraining order or under Fed. R. Civ. P. 56. The Court expects that Defendants and their counsel will make more effort in the future to comply strictly with the Local Rules. Failure to do so in the future may result in future motions being denied.

(citation and internal quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Id*. (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

**A.  The Eleventh Amendment Bars Many of Plaintiffs' Claims.**

The Eleventh Amendment to the U.S. Constitution prohibits "[t]he Judicial power of the United States" from being construed to extend "to any suit in law or equity, commenced or prosecuted against one of the United States." U.S. Const. amend. XI. The Eleventh Amendment recognizes that "each State is a sovereign entity in our federal system" and that no State is subject to suit in federal court unless the State consents to jurisdiction there. *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 54 (1996) (citation and quotation omitted). Eleventh Amendment immunity extends to instances where judgment against a state agency or official would have "essentially the same practical consequences as a judgment against the State itself." *Hadley v. North Arkansas Community Technical College*, 76 F.3d 1437, 1438 (8th Cir. 1996).

The Eleventh Amendment bars many lawsuits filed in federal court that are related to the conduct of state agencies and state officials. In general, a plaintiff may not bring a claim in federal court for any form of relief against a state agency. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *see*, *e.g., P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145-46 (1993) (barring suits for injunctive relief against states and their agencies). A plaintiff may not bring an action against a state official in his or her official capacity for monetary damages. *P.R. Aqueduct*, 506 U.S. at 146; *see also Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) (holding that "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages"). A plaintiff may also not bring an action against a state official in his or her individual capacity for injunctive relief. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984).

Finally, the Eleventh Amendment bars all "suits based on pendent state-law claims" against states and state officials, even if the plaintiff only seeks limited "prospective injunctive relief." *Minn. Pharmacists Ass'n v. Pawlenty*, 690 F. Supp. 2d 809, 815 (D. Minn. 2010).

Eleventh Amendment immunity, however, is not absolute. The United States Supreme Court has "long recognized an exception to Eleventh Amendment immunity permitting suits in federal court against state officials alleged to have violated federal law." *Id*. As a result, a plaintiff may bring a claim for injunctive relief against a state official in his or her official capacity. *Pugh*, 438 U.S. at 782. A plaintiff may also bring a claim for monetary damages against a state official in his or her individual capacity. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999)

In this case, the Eleventh Amendment bars many of Plaintiffs' claims. First, the Eleventh Amendment bars Plaintiffs' MHRA claim against MSOP and all Defendants in their official capacities because it is a pendant state law claim. *See Minn. Pharmacists Ass'n*, 690 F. Supp. 2d at 815; *see also Mayer v. University of Minnesota*, 940 F. Supp. 1474, 1476 (D. Minn. 1996) (concluding that court has no jurisdiction over a MHRA claim). Second, the Eleventh Amendment bars Plaintiffs' federal claims against MSOP and the Minnesota Department of Human Services because both are state agencies and subdivisions of the State of Minnesota. *Nelson v. Minnesota*, No. 04-cv-192, 2005 WL 1719369 *4 (D. Minn. July 20, 2005), *report and recommendation adopted by* 2005 WL 2205826 (Sept. 8, 2005). Finally, the Eleventh Amendment bars Plaintiffs' federal claims for monetary relief against the official-capacity Defendants and for injunctive relief against the individual-capacity Defendants. *See Pennhurst*, 465 U.S. at 101 n. 11; *King v. Dingle*,

702 F. Supp. 2d 1049, 1069 (D. Minn. 2010); *see also Brown*, 662 F.3d at 1161 n. 5 (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). The Court therefore recommends that each of these claims be dismissed with prejudice for lack of subject matter jurisdiction. *See Patil v. Minnesota State Univ., Mankato*, No. 12-cv-1052, 2012 WL 7807608 *16 (D. Minn. Dec. 10, 2012) (dismissing claims barred by the Eleventh Amendment for lack of subject matter jurisdiction), *report and recommendation adopted by* 2013 WL 1249220 (D. Minn. Mar. 27, 2013), *aff'd* 533 Fed. Appx. 698 (8th Cir. 2013) (per curiam).

Defendants also argue that Plaintiffs' claims for monetary relief against the individual-capacity Defendants should be dismissed because Plaintiffs allege that those Defendants acted within the scope of their duties at MSOP and because the state has indemnified them. The Eleventh Amendment bars suits against state officials in their individual capacity when the state is the real, substantial party in interest. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). But the fact that the state has chosen to indemnify its officials does not make it the real party in interest. *Luder v. Endicott*, 253 F.3d 1020, 2013 (7th Cir. 2001). Questions related to whether the defendant's conduct was within the scope of his or her duties are more properly considered in the context of a personal immunity defense. *Cf. Hafer*, 502 U.S. at 31. Therefore, the Court declines to recommend that Plaintiffs' claims for monetary relief against the individual-capacity Defendants be dismissed on Eleventh Amendment grounds.

Therefore, following application of the Eleventh Amendment, the Court recommends that all claims be dismissed, with the exception of Plaintiffs' (1) federal and state claims against the individual Defendants in their individual capacity for monetary

relief and (2) Plaintiffs' federal claims against the individual Defendants in their official capacity for injunctive and declaratory relief. The Court therefore examines whether Plaintiffs have pleaded facts that establish plausible claims for relief on those grounds.

### B. Plaintiffs Plead Sufficient Facts to Give Rise to a Plausible Section 1983 Claim (Count Two).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The "purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). In this case, Plaintiffs allege that Defendants' decision to deny Plaintiffs' request to be roommates violates their rights under the federal and state Equal Protection Clauses.

### 1. Federal Equal Protection Claim

The federal Equal Protection Clause prohibits States from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause keeps governmental decisionmakers from treating disparately persons who are in all relevant respects similarly situated." *Bills v. Dahm*, 32 F.3d 333, 335 (8th Cir. 1994). Though the Equal Protection Clause protects every person within the State's jurisdiction from intentional and arbitrary discrimination, it "does not guarantee"

that all persons will "be dealt with in an identical manner." *Mills v. City of Grand Forks*, 614 F.3d 495, 500 (8th Cir. 2010).

Here, Plaintiffs contend that they have been treated different than other persons who are civilly committed to MSOP. They argue that Defendants have treated Plaintiffs differently by allowing other patients to choose their roommates, while denying Plaintiffs' requests to live together. To assess Plaintiffs' claim, the Court first determines whether Defendants treated Plaintiffs differently because of their membership in a suspect class or whether Defendants' unequal treatment of Plaintiffs burdened their fundamental rights. *Gilmore v. County of Douglas, State of Neb.*, 406 F.3d 935, 937 (8th Cir. 2005).

### a. Suspect Classification

Plaintiffs claim that Defendants denied Plaintiffs the opportunity to be roommates on the basis of their sexual orientation. Plaintiffs allege that patients who pose a greater security risk than Plaintiffs and have repeatedly broken MSOP rules, are still allowed to become roommates. They allege that Defendants have never articulated in any meaningful detail why their security concerns related to Plaintiffs are different than those of other patients who were able to select their roommates.

In support of their claim, however, Plaintiffs only allege that the facts as pled in their complaint establish that Defendants "maintain a custom and practice of discrimination against Plaintiffs based on their past sexual encounters and sexual preference." Compl. ¶ 45. That allegation is conclusory and nothing more than a "naked assertion[]" that is insufficient to give rise to a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. In fact, the "factual enhancement" that Plaintiffs claim supports this allegation does nothing of the

sort. Rather than showing a pattern of discrimination based on their sexual orientation, Plaintiffs allege a set of facts that show that Defendants denied Plaintiffs' request because they were previously in a relationship. Plaintiffs' allegations also establish that Defendants were concerned that Plaintiffs' previous relationship would make it difficult for them to follow rules and might jeopardize their treatment. Plaintiffs do not allege that Defendants routinely deny requests to room together from those with the same sexual orientation as Plaintiffs, while granting the same requests to those with a different sexual orientation. Plaintiffs also do not allege that Defendants would have denied Plaintiffs' request regardless of their relationship history. As pleaded, Plaintiffs only show that Defendants had particular safety and treatment concerns related to Plaintiffs' previous relationship. Plaintiffs' allegations are insufficient to show that Defendants treated Plaintiffs differently than other MSOP patients because of Plaintiffs' sexual orientation.

### b. Fundamental Right

Having concluded that the facts as pled do not establish that Defendants treated Plaintiffs differently because of their sexual orientation, the Court next considers whether Defendants infringed upon Plaintiffs' fundamental rights by treating Plaintiffs differently than other MSOP patients. Plaintiffs contend that Defendants have infringed upon Plaintiffs' First Amendment's right to freedom of association. Freedom of association is a "basic constitutional freedom" that "extends to protect certain intimate human relationships . . . from state intrusion." *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1081 (8th Cir. 2008). Relationships that typically receive constitutional protection include marriage, childrearing, and cohabitation with relatives. *Bd. of Directors of Rotary Intern.*

*v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987). Whether a particular relationship is protected under the First Amendment is determined by considering the "size, purpose, selectivity, and whether are others excluded from critical aspects of the relationship." *Id.* at 546.

Here, Plaintiffs allege that Defendants have infringed upon Plaintiffs' right to freedom of association by denying them the opportunity to room together as platonic friends. Courts are split as to whether a roommate or friendship relationship is entitled to constitutional protection. Some courts have held that the "roommate relationship easily qualifies" for constitutional protection as people "generally have very few roommates; they are selective in choosing roommates; and non-roommates are excluded from the critical aspects of the relationship, such as using the living spaces." *Fair Housing Council of San Fernando Valley v. Roomate.com, LLC*, 666 F.3d 1216, 1221 (9th Cir. 2012); *see also Akers v. McGinnis*, 352 F.3d 1030, 1039-40 (6th Cir. 2003) ("Personal friendship is protected as an intimate association"). Others have concluded that relationships between unrelated persons are not protected by the First Amendment, even if those persons live together or are involved in an intimate relationship. *See Palo Alto Tenants Union v. Morgan*, 321 F. Supp. 908, 911-12 (N.D. Cal. 1970). Still others extend constitutional protection to relationships between unrelated persons only if those persons live together and are involved in an intimate relationship. *See Christensen v. County of Boone,* 483 F.3d 454, 463-465 (7th Cir. 2007) (concluding that an unmarried couple in a long-term relationship is a form of "intimate association" protected by the Constitution); *Lord v. Erie Cnty.*, No. 08-cv-213, 2011 WL 4056081 *5 (W.D. Penn. Sept. 8, 2011) (holding that

relationships between close friends do not warrant constitutional protection unless parties are involved in an intimate relationship). The United States Supreme Court has not addressed the subject directly, other than to hold that the First Amendment is not violated by a zoning ordinance that limits the number of unrelated persons who can live together to two individuals. *See Village of Belle v. Boraas*, 416 U.S. 1, 7-10 (1974).

The Court concludes that Plaintiffs have alleged sufficient facts to show that Defendants' unequal treatment of Plaintiffs burdened their fundamental right to free association. Plaintiffs allege that they are close friends. They allege that they wish to live together. They allege that there are others at MSOP who they do not wish to live with because those persons pose safety concerns to Plaintiffs. Plaintiffs allege that they would be more comfortable at MSOP if they were able to live together. The type of relationship that Plaintiffs describe in their allegations is small, as it is limited to two people, selective, as Plaintiffs have requested to live together, and excludes others, as Plaintiffs do not wish to have others live with them. Plaintiffs' relationship, as alleged in their complaint, satisfies the criteria necessary for Plaintiffs' relationship to be entitled to constitutional protection. *See Bd. of Dirs. of Rotary Intern.*, 481 U.S. at 546 (listing characteristics of constitutionally protected relationships); *Rode v. Dellarciprete*, 845 F.2d 1195, 1205 (3d Cir. 1988) (holding that relationships that individuals "select[]" to have with one another are entitled to constitutional protection). Defendants will be able to obtain additional information regarding Plaintiffs' relationship through deposition and other discovery and, if appropriate, put those claims to test at a motion for summary judgment.

In reaching this recommendation, the Court recognizes that the conflicting caselaw regarding the extent to which constitutional protection is afforded to relationships between friends and roommates. To the extent, however, that courts have rejected providing constitutional protection to relationships between unrelated persons, most appear to have done so because those persons did not live together. *Lord*, 2011 WL 4056081 at *5. But to the extent a court has considered that question recently, it has concluded that those relationships are entitled to constitutional protection. *See Fair Housing Council of San Fernando Valley*, 666 F.3d at 1221. Therefore, at this stage of the proceeding, Plaintiffs' allegations are sufficient to give rise to a plausible claim that Defendants' disparate treatment of Plaintiffs infringed upon Plaintiffs' fundamental rights.

### c.  Scrutiny of Defendants' Decision

If the government burdens an individual's fundamental rights by treating that individual differently than others similarly situated, the Court must then review the unequal treatment under the appropriate level of scrutiny to determine whether government's classification is constitutional. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). In an ordinary equal protection case, courts review the disparate treatment of an individual under one of three standards: (1) rational basis; (2) intermediate scrutiny; or (3) strict scrutiny. *Id*. Government action that infringes upon the right of unmarried person to live together is typically reviewed under the intermediate scrutiny standard. *See, e.g., Reuter v. Skipper*, 832 F. Supp. 1420, 1423 (D. Or. 1993). Government action that inhibits close personal friendships is usually reviewed under a rational basis standard. *See, e.g., Akers*, 352 F.3d at 1040.

This, however, is not an ordinary equal protection case. Plaintiffs' equal protection claims arise in the context of their civil commitment to MSOP. Because persons confined at MSOP are "by statutory definition, 'dangerous to the public,'" their constitutional rights are far more limited than those who are not civilly committed. *Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009); *Semler v. Ludeman*, No. 09-cv-0732, 2010 WL 145275 *15, (D. Minn. 2010). As a result, persons civilly committed to MSOP have the same constitutional rights as pretrial detainees. *Serna*, 567 F.3d at 948. And when "equal protection challenges arise in a prison context," courts "adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002). In such cases, courts must uphold the disparate treatment of an individual so long as it is "**reasonably related to legitimate penological interests**." *Turner v. Safley*, 482 U.S. 78, 89 (1987) (emphasis added). This standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 655 (4th Cir. 2001).

Courts apply a modified version of the *Turner* standard to review constitutional claims brought by persons who are civilly committed to MSOP. *Ivey v. Mooney*, No. 05-cv-2666, 2008 WL 4527792 *4, (D. Minn. Sept. 30, 2008); *see also Williams v. Johnston*, No. 14-cv-369, 2015 WL 1333991 *7, (D. Minn. Jan. 28, 2015) (stating that people who are civilly committed to MSOP are entitled to "more considerate treatment and conditions of confinement than a prison inmate") (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 887 (8th Cir. 2006)), *report and recommendation adopted by* 2015 WL 1334015 (D. Minn. Mar. 25, 2015). In doing so, courts consider whether the disparate treatment of an

individual is reasonably related to the legitimate therapeutic or institutional interests of MSOP. *Ivey*, 2008 WL 4527792 at *10 (citing *Turner*, 482 U.S. at 89-91 (applying standard to constitutional claim brought by prisoner)); *see also Williams*, 2015 WL 1333991 at *7 (applying standard to freedom of association claim brought by person civilly committed to MSOP). To make this determine, courts consider the following four factors:

(1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it;

(2) whether the plaintiff has alternative means of exercising his or her constitutional rights;

(3) the impact that accommodation of the plaintiff's constitutional rights would have on guards and other patients, and on the allocation of the general resources of the institution; and

(4) whether obvious, easy alternatives exist to meet the state's objectives.

*Id*. The burden to show a government action is not reasonably related to legitimate therapeutic interests falls on the plaintiff. *Ivey*, 2008 WL 4527792 at *5.

At this stage of the proceeding, where the factual allegations of the complaint are all that the Court may consider, the Court is unable to weigh the *Turner* factors in a meaningful manner. There is undoubtedly a rational connection between the regulation of roommates at MSOP and the government's interest of ensuring a safe and effective treatment facility. Plaintiffs even allege so in their complaint, as they note that Defendants expressed concern that Plaintiffs would violate MSOP rules and regulations if they lived together. But beyond this, there is little information in the record that is related to the other factors the Court must consider. The record does not contain information related to, for example, whether Plaintiffs have an alternate way of exercising their First Amendment

rights. The record also contains no information regarding the burden that Plaintiffs' request would place on MSOP staff. In addition, the record contains little detail about the precise rationale behind Defendants' decision, including their specific treatment concerns regarding Plaintiffs, the policies that Defendants considered before reaching their decision, or whether Defendants considered Plaintiffs' concerns regarding their current roommates. Finally, there is also nothing in the record that shows the reasons why Defendants granted the requests of some MSOP patients to live together.

It is quite possible, if not even likely, that Defendants' decision was well-thought out and supported by legitimate concerns regarding Plaintiffs' treatment as MSOP patients or institutional safety, or both. But at this stage of litigation, the Court will not presume those reasons to exist. As a result, it is more appropriate for discovery to go forward, for depositions of the relevant parties to take place, and for a record to be developed that will allow for a more thorough consideration of the *Turner* factors, which the Court must evaluate before determining the constitutionality of Defendants' decision. Accordingly, the Court concludes that Plaintiffs have pled sufficient facts to establish a plausible Section 1983 claim to survive Defendants' motion to dismiss.

### d.  Qualified Immunity

Defendants contend that, should the Court determine that Plaintiffs have pled a plausible Section 1983 claim, the Court should also conclude that Defendants are entitled to qualified immunity.[2] "Qualified immunity is a defense only against a claim in one's

---

[2] Because Plaintiffs do not allege sufficient facts to show that Defendants treated Plaintiffs differently because of their sexual orientation, it is unnecessary to consider whether Defendants are entitled to qualified immunity on that basis.

individual capacity." *Bankhead v. Knickrehm,* 360 F.3d 839, 844 (8th Cir. 2004). Qualified immunity protects government officials from liability for civil damages when their "conduct does not violate clearly established . . . constitutional rights of which a reasonable official would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Rights are clearly established when "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

In this case, the Court recommends that the individual-capacity Defendants receive qualified immunity from Plaintiffs' Section 1983 claim. "There is no clearly established law whether or not associations with friends and acquaintances are sufficiently intimate to be entitled to the constitutional protection of freedom of association." *Vieira v. Presley*, 988 F.2d 850, 853 (8th Cir. 1993). In fact, the conflicting caselaw discussed above shows that the constitutional right to associate with a friend or even a roommate has not been clearly established and, indeed, is still of a matter of disagreement among the courts. *See, e.g.*, *Fair Housing Council of San Fernando Valley*, 666 F.3d at 1221; *Lord*, 2011 WL 4056081 at *5. Accordingly, a "reasonable official in the place of these defendants would not have understood that [their] alleged actions violated a protected right to freedom of association." *Vieira*, 988 F.2d at 853. The Court therefore recommends that Plaintiffs' Section 1983 claim against the individual-capacity Defendants be dismissed with prejudice.

### 2. State Equal Protection Claim

Plaintiffs also bring a claim under the Minnesota Constitution's counterpart to the Fourteenth Amendment's Equal Protection Clause. Section 1983 does not provide a cause

of action for violations of the Minnesota Constitution. *See generally* 42 U.S.C. § 1983; *Daywitt*, 2017 WL 8947245 at *4. Because this claim fails as a matter of law the Court recommends that Plaintiffs' Section 1983 claim, insofar as it alleges a violation of the Minnesota Constitution, be dismissed with prejudice.

### C. Plaintiffs Fail to Plead a Viable Title II Claim (Count 3).

 Plaintiffs also allege that Defendants unlawfully discriminated against them on the basis of their sexual orientation in violation of Title II of the Civil Rights Act of 1964.  *See* 42 U.S.C. § 2000a(a). That statute provides that all "persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." *Id*. A person alleging a violation of this statute may bring a civil action "for preventative relief." 42 U.S.C. § 2000a-3(a).

Title II does not protect against claims of discrimination on the basis of sexual orientation, nor does it protect from discrimination based on a person's friendships or relationships. 42 U.S.C. § 2000a(a). Accordingly, Plaintiff have failed to establish a plausible Title II claim as a matter of law. The Court recommends that this claim be dismissed with prejudice. *See Daywitt*, 2017 WL 8947245 *2-3.

In addition, Plaintiffs also fail to allege sufficient facts to demonstrate that MSOP is a place of public accommodation as denied by Title II. Under Title II, public accommodations are defined to include "establishment[s] which provide lodging to transient guests; facilities principally engaged in selling food for consumption on the

premises; place[s] of exhibition or entertainment such as theaters and sports arenas; and any other establishment holding itself out as serving patrons of a covered establishment which is also located within the premises of a covered establishment or within the premises of which is physically located any such covered establishment." *Lovejoy v. Minn. Dep't of Human Services*, No. 16-cv-2468, 2017 WL 462015 *9, (D. Minn. Jan. 3, 2017) (citation and internal quotations omitted), *report and recommendation adopted by* 2017 WL 455933 (D. Minn. Feb. 2, 2017). MSOP does not fall into this definition. *Id*. Plaintiffs' claim for relief under Title II could be dismissed for this reason as well.

Finally, even if Plaintiffs otherwise pled a viable Title II claim, the Court would still recommend that this claim be dismissed because Plaintiffs have not alleged that they served written notice of it on the Minnesota Department of Human Rights. A person may not immediately bring a civil action under Title II if (1) state law prohibits the discriminatory practice complained of and (2) authorizes a State authority to "grant or seek relief from such practice." 42 U.S.C. § 2000a-3(c). In those cases, the person must first provide 30-days' written notice of the discriminatory act or practice to the "appropriate State or local authority." *Id*. § 2000a-3(c). Here, Minnesota law prohibits the denial of "full and equal enjoyment . . . of [a] public accommodation" on the basis of sexual orientation. Minn. Stat. § 363A.11, subd. 1(a)(1). Minnesota law also authorizes the Minnesota Department of Human Rights to "receive and investigate charges of unfair discriminatory practices." Minn. Stat. § 363A.06, subd. 1(a)(8). Accordingly, Plaintiffs were required to serve notice of their allegations to the Minnesota Department of Human Rights. They do not allege that

they served any such notice. For this reason as well, this Court recommends that Plaintiffs'
Title II claim be dismissed.

Finally, in their Title II count, Plaintiffs seek a declaratory judgment (1) stating that
Defendants unlawfully discriminated against them in violation of the MHRA and the state
and federal Equal Protection Clauses and (2) ordering that Defendants' policies, practices,
and procedures for determining roommates be terminated. A declaratory judgment is "[a]
binding adjudication that establishes the rights and other legal relations of the parties
without providing for or ordering enforcement." *Lovejoy*, 2017 WL 462015 at *5 (citations
omitted).  In contrast, an "injunction . . . is [a] court order commanding or preventing an
action." *Id*. (citations and internal quotations omitted). To obtain a declaratory judgment a
party must seek more "than a retrospective opinion" that he or she "was wrongly harmed
by the defendant." *Id*. (citations omitted).

The relief that Plaintiffs seek here is not appropriately obtained through a
declaratory judgment. Plaintiffs' first request, a declaratory judgment that Defendants
unlawfully discriminated against them, would amount nothing more than a retrospective
opinion. *See id*. Plaintiffs' second request, a declaratory judgement terminating
Defendants' policies, procedures and practices for determining roommates at MSOP, is
essentially a request for a court order prohibiting Defendants from taking certain actions.
This type of relief is more appropriately obtained through an injunction. *See id*.
Accordingly, the Court recommends that Plaintiffs' requests for declaratory relief be
dismissed.

### D.  Plaintiffs Fail to State a Viable MHRA Claim (Count 1).

Plaintiffs also seek relief under the MHRA. They allege that Defendants have treated them unequally by denying them the opportunity "to demonstrate the skills that the 'so-called' treatment program has offered them." Compl. ¶ 53. They again allege this discrimination is on the basis of their sexual orientation.

Plaintiffs fail to plead a viable cause of action under the MHRA. The MHRA makes unlawful the denial to any person the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of . . . sexual orientation." Minn. Stat. § 363A.11, subd. 1(a)(1). To prove a violation of the MHRA, the plaintiff must show that he or she: (1) is a member of a protected class; (2) was denied services or accommodations; and (3) was denied services or accommodations because of her membership in the protected class. *Childs v. Extended Stay of America Hotels*, No. 10-cv-3781, 2012 WL 2126845 *5, (D. Minn. June 12, 2012).

Here, Plaintiffs' claim fails for the same reasons as the portion of their Section 1983 claim alleging that Defendants treated Plaintiffs differently from other MSOP patients because of Plaintiffs' sexual orientation. As pled, Plaintiffs do not establish that Defendants denied Plaintiffs' request to live together because of their sexual orientation. Instead, Plaintiffs merely demonstrate that Defendants denied Plaintiffs' request because of their previous relationship and the concerns that this relationship posed to their safety and treatment. The Court therefore recommends that this claim be dismissed as well.[3]

---

[3] It is not necessary to reach Defendants' argument that MSOP is not a "place of public accommodation" as defined by the MHRA. *See* Minn. Stat. § 363A.03, subd. 34. If it were, however, the Court notes that the MHRA definition of a public accommodation appears broader than the Title II definition. *Compare id*. *with* 42 U.S.C. § 2000a(b). It is not apparent on the face of this complaint, therefore, that the MHRA would not apply to MSOP and its staff.

### E. Plaintiffs have not pled a viable punitive damages claim.

In their prayer for relief, Plaintiffs also seek punitive damages. There is no independent cause of action for punitive damages in federal or Minnesota law. *Jackson v. Wiersema Charter Service, Inc.*, No. 08-cv-27, 2009 WL 1310064 *3, (E.D. MO. May 11, 2009); Minn. Stat. §§ 549.191-.20. Punitive damages are a remedy available "in some instances and not others." *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 1000 (D. Minn. 2013) (quotation omitted). In a Section 1983 case, punitive damages are available only to punish a party for "willful or malicious conduct." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n. 9 (1986). In a claim brought under the MHRA, punitive damages may not exceed $25,000 and may only be awarded pursuant to Minnesota Statutes section 549.20, subdivision one, which requires a showing that the defendant demonstrated "deliberate disregard for the rights or safety of others." Minn. Stat. § 363A.29, subd. 4. Punitive damages are not available in claim brought under Title II of the Civil Rights Act of 1964. *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) ("When a Plaintiff brings an action under [Title II], he cannot recover damages.").

Because the Court recommends that each of Plaintiffs' underlying claims for monetary damages be dismissed, it recommends that any claim that Plaintiffs make for punitive damages also be dismissed. But even if Plaintiffs' claims for monetary relief survived Defendants' motion to dismiss, Plaintiffs have failed to plead facts showing that they are entitled to punitive damages. Plaintiffs make no allegation of malice or deliberate disregard for their rights. Nor do they plead any facts that allow the Court to infer the necessary state of mind to determine a viable claim for punitive damages exists. The "mere

conclusion" that Plaintiffs are entitled to punitive damages is insufficient to justify such an award. *Cameron v. Whirlwindhorse*, 494 F.2d 110, 114 (8th Cir. 1974). Accordingly, the Court would recommend that any claim for punitive damages be dismissed.

## III.    RECOMMENDATION

Plaintiffs have brought suit under 42 U.S.C. § 1983, the MHRA, and Title II of the Civil Rights Act of 1964, challenging MSOP's decision to deny them the ability to be roommates. Plaintiffs have sued various individual defendants in their personal and official capacities and both MSOP and the Minnesota Department of Human Services as entities. Plaintiffs seek monetary damages, declaratory relief, and injunctive relief.

The Eleventh Amendment to the United States Constitution bars Plaintiffs' state and federal claims against MSOP and the Minnesota Department of Human Services. It also bars Plaintiffs' MHRA claim against the individual Defendants in their official capacity, Plaintiffs' federal law claims against the individual Defendants in their official capacity for monetary relief, and Plaintiffs' federal law claims against the individual Defendants in their individual capacity for injunctive and declaratory relief. In addition, the doctrine of qualified immunity bars Plaintiffs' claim under 42 U.S.C. § 1983 for monetary relief against the individual Defendants acting in their individual capacity. Plaintiffs' Section 1983 claim, to the extent it alleges a violation of the Equal Protection Clause of the Minnesota Constitution, also fails because Section 1983 does not provide a cause of action for violations of the Minnesota Constitution. Plaintiffs' claim under Title II of the Civil Rights Act of 1964 fails because Plaintiffs fail to show that statute protects against claims of discrimination on the basis of sexual orientation. Finally, Plaintiffs' MHRA claim for

monetary relief against the individual Defendants in their individual capacities fails because Plaintiffs fail to demonstrate that those Defendants discriminated against them on the basis of their sexual orientation. Accordingly, the only claim that remains following Defendants' motion to dismiss is Plaintiffs' Section 1983 claim for injunctive relief against the individual Defendants in their official capacity, based on a violation of the federal Equal Protection Clause.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 19) be **GRANTED IN PART and DENIED IN PART** as follows:

   a. Count 1, to the extent that it asserts a claim against MSOP and the Minnesota Department of Human Services, individual-capacity claims against Defendants Kulas, Joslin, Leivian, Vaineo, and the 1E clinical team for injunctive relief, and official-capacity claims against Defendants Kulas, Joslin, Leivian, Vaineo, and the 1E clinical team, be **DISMISSED WITH PREJUDICE;**

   b. Count 1, to the extent that it asserts individual-capacity claims against Defendants Kulas, Joslin, Leivian, Vaineo, and the 1E clinical team for monetary relief, be **DISMISSED WITHOUT PREJUDICE;**

   c. Count 2, to the extent that it asserts a claim against MSOP and the Minnesota Department of Human Services, individual-capacity claims against Defendants Kulas, Joslin, Leivian, Vaineo, and the 1E clinical team, official-capacity claims against Defendants Kulas, Joslin, Leivian, Vaineo, and the 1E clinical team for monetary relief, and any claim for violation of the Minnesota Constitution, be **DISMISSED WITH PREJUDICE;**

   d. Defendants' motion be denied with respect to Count 2, to the extent that it alleges official-capacity claims against Defendants Kulas, Joslin, Leivian, Vaineo, and the 1E clinical team for injunctive relief for a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution; and

      e.  Count 3 be **DISMISSED WITH PREJUDICE.**

Date: December 13, 2018                              *s/ Tony N. Leung*

                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

                                                    *Daywitt et al. v. Minnesota Department*
                                                    *of Human Services et al.*
                                                    No. 17-cv-5574 (NEB/TNL)

### <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).